UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---------------------------------------------------------
RACHEL A. HARLAND,

                Plaintiff,                    06-CV-6667

v.                                            **DECISION**
                                            **And ORDER**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---------------------------------------------------------

INTRODUCTION

       Plaintiff, Rachel A. Harland ("plaintiff" or "Harland") filed this action seeking review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. § 1382, 1382c(a), and Disability Insurance Benefits ("DIB") under Title II of the SSA, 42 U.S.C. § 416(I), 423(d) from the period of February 11, 2000 through September 18, 2001.  Jurisdiction to review the Commissioner's decision arises under 42 U.S.C. § 405(g).  On September 7, 2004 Harland moved for judgment on the pleadings.  On October 7, 2004, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the Commissioner moved for judgment on the pleadings.

       After scrutinizing the record and for the reasons stated below this Court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly the Commissioner's motion for judgment on the pleadings is therefore granted.

## BACKGROUND

On February 18, 2000 plaintiff Rachel Harland, a 43 year old, filed an application for disability insurance benefits and supplemental security income claiming that she had become unable to work as a front desk clerk as of August 18,1998 because of seizures and osteoarthritis of the right knee.  (Tr. 13, 74-76, 165, 197, 239, 236).  The application was denied initially and on reconsideration by the State Disability Determination Service.  (Tr. 27-30, 33-35).  Plaintiff requested an administrative hearing which was held on August 24, 2001, at which hearing plaintiff was represented by an attorney.  (Tr. 370-86).

On the basis of the hearings and the medical record, the ALJ found that Harland suffered from the severe impairments of a seizure disorder, osteoarthritis of the right knee, obesity, and adjustment disorder with anxiety and depressed mood.  However, the ALJ found that  she did not suffer from any condition or combination of conditions that were equivalent or more severe than any of the listed impairments identified in the Listing of Impairments, Appendix 1, Subpart P, Regulation No. 4.  (Tr. 17).  The ALJ held that although the plaintiff cannot perform any past relevant work, she can perform a full range of light work provided that the plaintiff is not exposed to unprotected heights or dangerous or moving machinery and therefore is not disabled.  (Tr. 17-20).  On February 4, 2004 Harland's appeal of the ALJ's decision to the

Appeals Council was denied, and on March 22, 2004 plaintiff filed this action.  (Tr. 7-9).

## DISCUSSION

Harland contends that she is entitled to SSI and DIB benefits for the period from February 11, 2000 through September 18, 2000 as provided in Title II and XVI of the Social Security Act.  In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity.  SSR 83-20 (Aug. 20, 1980).

To be entitled to DIB benefits a claimant must meet the insured status requirements of 42 U.S.C. § 423(c).  To be eligible for SSI benefits a claimant must meet the income and resource limitations of 42 U.S.C. §§ 1382a, 1382b.  To receive benefits under either statute a claimant must demonstrate their inability to engage in a substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

I.   SCOPE OF REVIEW

Section 405(g) limits the court's scope of review to determining whether or not the Commissioner's findings are supported by substantial evidence.  See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2nd Cir. 1983) (finding that the reviewing court does not try a

benefits case de novo).  The court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

"Though [the court] must credit an ALJ's findings if supported by substantial evidence, we retain a responsibility to conduct a searching inquiry and to scrutinize the entire record, having in mind that the Social Security Act…is remedial in purpose." citing McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 798-99 (2nd Cir. 1983); Dousewicz v. Harris, 646 F.2d 771, 773 (2nd Cir. 1981).  Defendant asserts that the ALJ's decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings.  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2nd Cir. 1988).  If, after a review of the pleadings, the court is convinced that "the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," judgment on the pleadings may be appropriate. See, Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Because the court determines, after a review of the entire record, that the findings of the Commissioner are supported by substantial evidence,

judgment on the pleadings is hereby granted in favor of the defendant.

I.   The Commissioner's decision to deny Plaintiff benefits was supported by substantial evidence on the record.

The ALJ determined based on the evidence in the record that plaintiff did not suffer from a disability under the Social Security Act. A disability is defined by 42 U.S.C. § 423(d) as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…" 42 U.S.C. § 423(d) (1991). The ALJ determined that plaintiff was not engaged in substantial gainful activity; that plaintiff had a seizure disorder, osteoarthritis of the right knee, obesity, and adjustment disorder with anxiety and depressed mood that are severe impairments; that plaintiff's conditions either individually or in combination with her other impairments did not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; that plaintiff did not have the capacity to perform her past work, and that plaintiff retained the functional capacity to perform a full range of light work activities, provided that the plaintiff is not exposed to unprotected heights or dangerous or moving machinery. (Tr. 17-20).

The ALJ's Residual Functioning Capacity assessment finding that the plaintiff is able to engage in the full range of light

work, provided plaintiff avoid unprotected heights and dangerous or moving machinery, is supported by substantial evidence in the record. (Tr. 17-20). This determination incorporates the Physical Residual Functional Capacity Assessment of consultative examiner, Dr. Janis Dale on June 15, 2000. (Tr. 279-86). Dr. Dale concluded that the plaintiff can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand for about six hours, sit for about six hours, has an unlimited push and/or pull ability, and should avoid concentrated exposure to hazards including machinery and heights. (Tr. 280, 283). This evaluation is supported by the conclusion of Dr. Mark Nepokroeff, a consulting examining physician for the Commissioner, on May 12, 2000 that the plaintiff can perform work with no heavy lifting, limited ambulation, and that does not involve operating a motor vehicle or heavy machinery. (Tr. 199). Dr. Nepokroeff noted that the plaintiff's gait, station and posture were normal and that she was able to heel/toe walk with both feet and able to squat. Dr. Nepokroeff stated that the plaintiff's motor strength in her lower extremities were 3/5 in her right leg, 4/5 in her left leg, and had no joint abnormalities. Id. In a Rehab Discharge Report/Functional Grid by McAuley-Seton Home Care it was opined that the plaintiff has complete/modified independence regarding ambulation. (Tr. 214). On January 20, 1998 Dr. Patrick Pullicino opined that the plain-

tiff's motor strength is 5/5 in all extremities and her reflexes were 2+ in all extremities.  (Tr. 196).

In a psychiatric consultative report dated April 22, 2000, psychologist, Dr. John R. Lick opined that the plaintiff has a "moderate functional psychiatric disability associated with problems of comprehension, which would make jobs requiring complex information processing or sensitive interpersonal interaction difficult."  (Tr. 166).  Dr. Lick noted that the plaintiff's thought processes were intact, there was no evidence of delusions, hallucinations, obsessions or compulsions and that the plaintiff's insight and judgment are fair.  (Tr. 165).  This diagnosis is consistent with the conclusions of consultative psychologist K.C. Sharma's report dated May 12, 2000.  (Tr. 200-02).  Sharma noted that the plaintiff had no speech articulation problem, no evidence of delusions, hallucinations, obsessions or phobias and her insight and judgment are fair.  (Tr. 201).

Objective medical evidence in the record supports the ALJ's finding that the plaintiff is not disabled.  On January 5, 1998 an MRI of the plaintiff's head was administered by Dr. Sadaat Kamran. (Tr. 128, 303).  Dr. Kamran noted that there were no definite brain parenchymal abnormalities and concluded that the results were "essentially normal." (Tr. 303).  On January 5, 1998 an electroen-cephalogram ("EEG") was performed by Dr. Kenneth Murray.  (Tr. 304-05).  Dr. Murray noted no definite epileptogenic activity or

definite abnormalities and concluded that these findings are
suggestive of a possible pychogenic pseudoseizure.[1] (Tr. 305). In
his conclusion Dr. Murray expressed a strong suspicion regarding
the diagnosis of epilepsy. Id. On January 20, 1998, Dr. Patrick
Pullicino, claimant's treating physician, noted that findings that
there were no focal postictal slowing and an alpha rhythm within 30
seconds after the end of the plaintiff's seizure suggests possible
psychogenic pseudoseizure. (Tr. 196). A CT scan of the plain-
tiff's head was performed by Dr. Rohit Bakshi on January 20, 1998
with normal results, that revealed no significant brain parenchymal
abnormalities. (Tr. 306). Another CT scan of the plaintiff's head
and posterior fossa was undertaken by Dr. Grant Golden on March 17,
2000 which revealed normal results with no evidence of fresh
hemorrhage or extra-axial fluid collection, mass effect or midline
shift. (Tr. 339).

In order to be granted benefits a claimant must follow the
treatment prescribed by the claimant's physician if this treatment
can restore the claimant's ability to work. 20 C.F.R. §
404.1530(a). "As a result of a modern treatment, which is widely
available, only a small percentage of epileptics, who are under

---

[1]A pseudoseizure is an attack resembling an epileptic seizure but having purely
psychological causes; it lacks the electroencephalographic characteristics of epilepsy and the
patient may be able to stop it by an act of will. W.B. Saunders, *Dorland's Illustrated Medical
Dictionary*, (2004)
<http://www.mercksource.com/pp/us/cns/cns_hl_dorlands.jspzQzpgzEzzSzppdocszSzuszSzcom
monzSzdorlandszSzdorlandzSzdmd_p_40zPzhtm>

appropriate treatment, are precluded from engaging in substantial gainful activity." SSR 87-6.  Situations where the seizures are not under control are usually due to the individual's noncompliance with the prescribed treatment, which includes a failure to continue ongoing medical care and to take medication at the prescribed dosage and frequency.  Id.  On June 30, 1998, Dr. Bharati Kolte noted that though the plaintiff denies noncompliance with medication, her drug level going down on an increased dose goes in favor of noncompliance.  (Tr. 136).  On July 17, 1998, a medical progress record from Millard Fillmore Hospital noted that though the plaintiff claimed that she had been taking her medications of Dilantin and Tegrtol regularly, her low drug level suggests noncompliance.  (Tr. 190).  On July 28, 1998, Dr. Patrick Pullicino noted that the plaintiff denies noncompliance, even though her drug levels are low.  (Tr. 189).  On June 2, 2000 Dr. Janis Dale concluded that the plaintiff is not compliant with her medication, considering her low Dilantin level.  (Tr. 287).  On November 14, 2000, Dr. Pullicino noted that the plaintiff's Dilantin level was low and that he stressed compliance to the plaintiff.  (Tr. 297, 322).  In an Emergency Department Physician's History and Treatment Record the plaintiff admitted that she was noncompliant with her medication.  (Tr. 344).

The plaintiff's claim that her medical impairments result in total disability is not supported by the substantial evidence in

the record.   Nor does the record substantiate her claim of significant mental issues which cause or contribute to a total disability.   The extent of her combined medical and mental disability, as found by the ALJ, does not rise to the level required by the Social Security regulations to support a claim of total disability within the meaning of the Act.   Accordingly, there is substantial evidence in the record to support the ALJ's finding that the plaintiff is not disabled and that she retains the residual functional capacity to perform a full range of light work (20 CFR §§ 404.1567 and 416.967).

<u>CONCLUSION</u>

For the reasons set forth above, I grant Defendant's motion for judgment on the pleadings, and dismiss plaintiff's complaint with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          January 25, 2007